GEORGE H. GUY, PLAINTIFF IN ERROR, v. C. H. DOWNS,.
ET AL., DEFENDANTS IN ERROR.

Homestead.   D. was the owner of a homestead consisting of two
     lots in the city of O., on which were situated the dwelling house
     and a large horse barn. A judgment was rendered and docketed
     against D., October 28, 1874. In 1876, D. left home and the state,
     for a temporary purpose, intending to return, leaving his wife
     and family occupying the homestead. Mrs. D. leased the barn
     to a tenant for a term of one year, reserving certain privileges.
     Execution issued and levied on so much of the ground as was.
     covered by the barn. On claim of exemption and injunction,
     *held*, that such leasing of the barn, and its use by the tenant,
     was not inconsistent with the occupancy of the homestead by
     the debtor, and a decree making the injunction against the sale
     on execution perpetual affirmed.

ERROR to the district court for Douglas county.   Tried
below before SAVAGE, J.

*W. J. Connell*, for plaintiff in error.

*John D. Howe*, for defendant in error.

COBB, J.

This was an action in equity brought by the defendant;
in error against the plaintiff in error, who was the sheriff
of Douglas county, and others, to enjoin the sale of cer-
tain premises claimed to be exempt as a part of the home-
stead of the plaintiffs in said action, and which had been
levied upon and advertised for sale by the said sheriff, to
satisfy an execution against the said plaintiffs.   On the
trial the district court found the issues for the plaintiffs,.
and the injunction was made perpetual by final decree.
The cause is brought to this court on error.

The only error assigned is, that said judgment is against,
law, and not sustained by the evidence.

The testimony is to the effect that C. H. Downs and
Cornelia C. Downs,  husband and wife, together with their

family, for many years owned and occupied lots one and two, in block eighty-seven, in the city of Omaha, as their homestead. These lots were improved by a large two story house, situated about the center of the two lots, with the usual outbuildings, and a horse barn, situated west of the house, and extending nearly to the west line of the west lot. This barn had been built by C. H. Downs for domestic use, and was occupied by him for stabling his family horses and cow, storing hay, etc. About the year 1876, C. H. Downs, having been unfortunate in financial transactions and being reduced in circumstances, temporarily left Omaha, and went to some part of the mining country and engaged in prospecting for mines, leaving his family, consisting of his wife and two daughters, together with his wife's father, in the occupancy of the homestead. Some time after the departure of C. H. Downs, the family, no longer keeping horses, had but little present use for the barn, and rented the same out for one year to parties for the purpose of a livery or boarding stable, reserving however "the right of necessary room in the loft for the use of storing a few stoves, also reserving the right of way about the said premises to care for one cow, and room for hay for said cow." After the lessee had taken possession of the barn under said lease, the twenty-two feet of the lot on which the said barn stands was levied on, and advertised for sale, by the plaintiff in error.

The only question in the case is whether the leasing of the barn as above stated amounted to an abandonment of the right of exemption in the property levied upon. It is not claimed, nor could it be, in view of the whole current of authorities, that the going away of C. H. Downs, in the manner and for the purpose above stated, amounted to an abandonment of his homestead right. This being the case, it may be pertinent to consider whether the doing of any act in his absence, by his wife,

or any other person, without his authority, could have the effect to deprive him of this important right in any part of his homestead.

It was agreed at the hearing that the judgment upon which it was sought to sell the property in question, having been rendered in 1874, this case comes under the provisions of section 525 of the General Statutes, which is as follows:

"A homestead, consisting of any quantity of land, not exceeding one hundred and sixty acres, and the dwelling house thereon, and its appurtenances, to be selected by the owner thereof, and not included in any incorporated city or village, or instead thereof, at the option of the owner, a quantity of contiguous land, not exceeding two lots, being within an incorporated town, city, or village, and according to the recorded plat of such incorporated town, city, or village, or in lieu of the above, a lot, or parcel of contiguous land, not exceeding twenty acres, being within the limits of an incorporated town, city, or village, the said parcel or lot of land not being laid off into streets, blocks, and lots, owned and occupied by any resident of the state being the head of a family, shall not be subject to attachment, levy, or sale, upon execution or other process, issuing out of any court in this state, so long as the same shall be owned and occupied by the debtor as such homestead."

The language of this section is not involved in any obscurity, and to the mind of the writer it is difficult to conceive it to be susceptible of but one meaning. The object of the law is to exempt, and save to the debtor and his family a home or place to live, be that home a farm in the country, a suburban residence within the corporate limits, but not within the laid out and platted portion of an incorporated town, city, or village, or a town, city, or village home, being within an incorporated town, city, or village, and according to the recorded plat of such incor-

porated town, city, or village; in other words, in the platted and recorded part thereof. In the first case such homestead is limited to one hundred and sixty acres of land, "and the dwelling house thereon and its appurtenances." In the second case, as the writer has arranged them, inverting their order—the homestead thus exempted is limited to "a lot or parcel of contiguous land, not exceeding twenty acres, being within the limits of an incorporated town, city, or village, the said parcel or lot of land not being laid off into streets, blocks, and lots. In the third case the homestead is limited to "a quantity of contiguous land not exceeding two lots, being within an incorporated town, city, or village, and according to the recorded plat of such incorporated town, city, or village." And the exemption of such homestead, of whichever kind it may be, is limited to residents of the state, and in respect to duration to "so long as the same shall be owned and occupied by the debtor as his homestead." This quantity of contiguous land, not exceeding two lots, having the homestead character impressed upon it, becomes, in view of its occupancy as such, one piece of property; so that the occupancy of one lot or one-half of the whole is, in contemplation of the statute, the occupancy of the whole.

No one will doubt that a homestead as above limited and defined would be occupied as such, within the meaning of the statute, by a residence thereon by the debtor and his family in a house of the smallest dimensions, although the entire balance of such land were suffered to go to waste or lie common. And why would it be any the less so occupied if such balance were put to some useful purpose? We can see no reason, even although such purpose might involve the joint occupancy of other persons. It is neither within the letter or the spirit of the statute that the occupancy of the homestead by the debtor should be exclusive. He fulfils the terms of the law by

continuing to occupy, and while he does so, he can do or suffer any other lawful thing in reference to the premises not inconsistent with his said occupancy.

In the case at bar, when Mrs. Downs leased the barn, she reserved certain room and accommodation in and about it for the purpose of storing stoves, and keeping a cow, hay, etc., so that in the strictest sense the debtor continued to occupy the barn. But we choose rather to put this opinion on the broader ground. The decree of the district court is affirmed.

DECREE AFFIRMED.